UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard Lee MILLER,
Defendant-Appellant.

No. 85–2552.

United States Court of Appeals,
Tenth Circuit.

Dec. 1, 1986.

Ira R. Kirkendoll, Asst. Federal Public Defender, Dist. of Kan. (Charles D. Anderson, Federal Public Defender, with him on the brief), Kansas City, Kan., for defendant-appellant.

Richard L. Hathaway, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty., with him on the brief), Topeka, Kan., for plaintiff-appellee.

Before McKAY, BALDOCK, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Richard Lee Miller was charged in the United States District Court for the District of Kansas with assaulting Ok Sun Stacey with an intent to commit rape at the Fort Riley Reservation, in the State of Kansas, in violation of 18 U.S.C. §§ 7 and 113(a). A jury convicted Miller of the

crime charged, and he was sentenced to fifteen years imprisonment and ordered to pay $50 to the Crime Victims Fund and make restitution in the amount of $630.10 to Ok Sun Stacey. On appeal, Miller urges as grounds for reversal the following: (1) error by the trial court in its appointment of an interpreter, and (2) error by the trial court in denying Miller's motion to inquire into the jury's verdict. Neither of these matters is ground for reversal, and we therefore affirm.

Ok Sun Stacey, the alleged victim of the assault, is a Korean who immigrated to the United States as the wife of a serviceman. On the eve of the trial the government attorney filed a motion asking the court to appoint a Ms. Nieman, an individual of Korean descent, to act as translator, when necessary, for certain Koreans who would appear at trial as government witnesses, including Ok Sun Stacey. In support of the motion, the government attorney stated that Ms. Stacey spoke Korean primarily and had difficulty in understanding some "American" words and phrases, and that Ms. Nieman had been qualified to serve as a court reporter in a state court in Kansas. Government counsel also stated that he had determined the court itself did not have a certified interpreter of the Korean language.

The motion to appoint an interpreter came on for hearing at the outset of the trial proper. Government counsel advised the court at that time that Ms. Stacey, the key government witness, had "difficulty ... with many American words and phrases." Defense counsel indicated that he had no objection to the appointment of Ms. Nieman if she was simply going to "stand by and to assist," but that he would object if all questions to Stacey and her answers thereto were to be "filtered" through the

interpreter. Government counsel then indicated that he only proposed to use the interpreter when a problem arose, and that Ms. Stacey would, in the first instance, respond to questions in English. Defense counsel then stated that, such being the case, he had "no objection."

■ On appeal, Miller, with different counsel, claims that the trial court erred in appointing Ms. Nieman to serve as an interpreter without qualifying her as an "expert" as required by Fed.R.Evid. 604.[1] The difficulty with this argument is that it was never made in the trial court. The general rule is that matters not raised in the trial court may not be raised in an appellate court. *United States v. Mitchell*, 783 F.2d 971, 975–76 (10th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986); *United States v. Hubbard*, 603 F.2d 137, 142 (10th Cir.1979). An exception to that rule is where, though no objection was made by counsel in the trial court, the matter affects "substantial rights" and therefore constitutes "plain error." Fed.R. Crim.P. 52(b). *See United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *United States v. Washita Const. Co.*, 789 F.2d 809, 823 (10th Cir. 1986); *Mitchell, supra; United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). However, this is not a case where defense counsel remained silent. As indicated, defense counsel in the trial court expressly consented to the procedure followed by the trial court. The appointment of a standby interpreter was quite possibly to the benefit of the defendant, as well as the prosecutor. Further, the court-appointed interpreter, Ms. Nieman, was used only sparingly at trial, Ms. Stacey demonstrating a good understanding of the English language. In any

---

1. Rule 604 of the Federal Rules of Evidence provides that an interpreter "is subject to the provisions of these rules relating to qualification as an expert...." Witnesses are qualified as experts "by knowledge, skill, experience, training, or education...." Rule 702. Rule 706 provides that the court "may appoint any expert witnesses agreed upon by the parties, and may

appoint expert witnesses of its own selection." Federal Rule of Criminal Procedure 28 provides that the court "may appoint an interpreter of its own selection...." Similarly, 28 U.S.C. § 1827(d) invests district courts with power to appoint interpreters and determine their competency.

event, having affirmatively consented in the trial court to the appointment of Ms. Nieman, counsel cannot on appeal successfully challenge her appointment.

Some two weeks after a jury of twelve convicted the defendant, defense counsel filed a motion in the trial court to inquire into the vote of one Betty Essman, one of the twelve jurors. In support of the motion to inquire, defense counsel stated that he had received a telephone call from a pastor of a local Topeka, Kansas church who told him, in effect, that a member of his church had confided to him that she had served as a juror on Miller's case and that she was having "second thoughts" about her vote. Specifically, according to the minister, the juror had stated that she was now "unsure" about Miller's guilt, that she may have misunderstood the court's instructions and that, in retrospect, she believed she had perhaps been "unduly influenced" by other members of the jury. This telephone conversation with the minister ended when defense counsel advised the minister that his parishioner, who at that time was unidentified, should "come forward and inform the court of her concerns."

The motion to inquire contained a further statement by counsel that a few days after his telephone conversation with the minister he received a telephone call from Betty Essman, who said she had talked to her pastor about the matter and that she was "concerned" and "wanted to come forward and explain her position to the Court."

The government responded to the motion to make inquiry and objected to the court's questioning of juror Essman, noting that there was no claim of "external" interference with the jury's deliberative process and that this was merely an attempt by one juror to impeach the jury's verdict.[2] We agree. *See United States v. Cattle King Packing Co., Inc.,* 793 F.2d 232, 243 (10th Cir.1986) where we commented as follows:

**2.** It is settled law that juror testimony is inadmissible to impcach a verdict, except where the proffered testimony relates to "whether *extraneous* prejudicial information" or any *"outside* influence was improperly brought to bear upon any juror." Federal Rule of Evidence 606(b)

Jurors may, at times, feel sorry for a defendant even though they voted to convict the defendant of the crime charged. The fact of the former, however, does not in any wise vitiate the latter. We, therefore, affirm the trial court's decision refusing to conduct a hearing on the thin allegations of jury misconduct.

Since Miller does not allege any "external" interference with the jury's deliberative process, Rule 606(b) applies, and the trial court therefore acted well within its discretion in declining to make inquiry of the juror.

By leave of court, the defendant's wife, a non-lawyer, filed a separate brief on behalf of the defendant. She raises matters not urged by appellate counsel. Specifically, she argues that the testimony of certain government witnesses, including that of Ms. Stacey, was not reliable, that jury instructions were improper, and that trial counsel's representation was constitutionally ineffective. None of these arguments has merit.

Judgment affirmed.

(emphasis supplied). *See United States v. Jelsma,* 630 F.2d 778 (10th Cir.1980). *See generally Lohr v. Tittle,* 275 F.2d 662, 667–68 (10th Cir. 1960); *Holden v. Porter,* 405 F.2d 878, 879 (10th Cir.1969) (per curiam).