28 F.3d 113
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Gino ALIOTO, Defendant-Appellant.
 No. 93-1006.
 United States Court of Appeals, Tenth Circuit.
 June 30, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before LOGAN and MOORE, Circuit Judges, and O'CONNOR, District Judge.[2]
 
 
 2
 Defendant appeals a conviction and sentence for conspiracy to possess marijuana and possession of marijuana. He claims the district court erred in denying his post-trial motion for contact with a juror and including his cocaine-related behavior as relevant conduct. Because we conclude defendant made no showing of a need to contact the juror and that his involvement with cocaine was properly included in his offense conduct, we affirm.
 
 
 3
 Defendant asserts the trial court erred in denying his post-trial motion for communication with the jury foreman. See United States v. Posner, 644 F.Supp. 885, 887 (S.D. Fla.1986). After the district court received the verdicts, it noted a correction had been made and initialed on one of the forms. Apparently, the jury foreman originally had marked "not guilty" on the marijuana count, but the jury returned a guilty verdict on that offense.
 
 
 4
 The court polled the jury collectively, asking:
 
 
 5
 THE COURT: In regard to Mr. Alioto, as to Count 1 of the indictment we the jury find the defendant not guilty. As to Count 2 originally there was an entry not guilty I take it and its guilty by your interlineation; is that correct, please, ladies and gentlemen?
 
 
 6
 THE JURY [collectively]: Yes....
 
 
 7
 THE COURT: Did I correctly read your verdicts, ladies and gentlemen?
 
 
 8
 THE JURY: Yes.
 
 
 9
 THE COURT: In regard to Mr. Alioto?
 
 
 10
 THE JURY: Yes.
 
 
 11
 At the end of the general poll, the court polled each juror individually, and then gave the defendant an opportunity to request further polling. Defendant declined the offer.
 
 
 12
 When it appears that there is any uncertainty or contingency in a jury's verdict, it is the trial court's duty to resolve that doubt. United States v. Hernandez-Garcia, 901 F.2d 875, 878 (10th Cir.), cert. denied, 498 U.S. 844 (1990). In this case, the trial court's actions satisfied that duty. Nevertheless, despite having declined the offer to poll the jury in open court, two weeks after trial the defendant filed his motion to communicate with the presiding juror.
 
 
 13
 Generally, inquiry into the jury's verdict is prohibited by Fed.R.Evid. 606(b). That rule precludes judicial inquiry into the validity of a verdict unless extraneous information or influences have colored the jury's decision. In his motion, defendant presented neither evidence nor suggestion of extraneous influences to justify the requested communication. Because defendant cannot even speculate about possible external influences, we must conclude the district court did not abuse its discretion in denying the motion for communication. United States v. Miller, 806 F.2d 223 (10th Cir.1986).
 
 
 14
 Claiming the trial court's findings are clearly erroneous, defendant also argues the court improperly included the cocaine-related charges on which the jury returned not guilty verdicts as relevant conduct. In determining a base offense level, U.S.S.G. 1B1.3 provides all acts and omissions aided and abetted by the defendant, as well as all acts which were part of the same course of conduct, should be considered. This court has held it is permissible for a sentencing court to consider conduct related to an offense even if the defendant has been acquitted of charges. United States v. Garcia, 987 F.2d 1459, 1461 (10th Cir.1993). Further, "[i]n the Commentary to [ 1B1.3] is the statement that in a drug distribution case, quantities and types of drugs not specified in the charge with which defendant stands convicted are to be included in determining the base offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." United States v. Smith, 929 F.2d 1453, 1459 (10th Cir.), cert. denied, 112 S.Ct. 146 (1991); see U.S.S.G. 2D1.1, note 12.
 
 
 15
 In this case, defendant does not mount a legal challenge to his sentence so much as a factual challenge. The district court ruled, not by a preponderance of the evidence, but by "clear and convincing evidence" that defendant was involved in the storage and distribution of cocaine. Specifically, the court found defendant had permitted his codefendant, Mr. Dago, to store quantities of cocaine at defendant's apartment and thus inferred Mr. Alioto had knowledge of the cocaine storage.
 
 
 16
 The government points to salient facts as proof of defendant's guilty knowledge. Police found a suitcase containing cocaine in Mr. Alioto's house. They also recorded conversations in which Mr. Dago told Mr Alioto that he wanted to use defendant's home. Further, the government notes Mr. Alioto was present during transactions and involved in communications to arrange other transactions.
 
 
 17
 Although defendant takes issue with the evidence, pointing out certain things the government did not prove, he does not rebut any of the facts relied upon by the government, nor does he indicate why that evidence is clearly erroneous. At most, Mr. Alioto seems to argue he should not be responsible for conduct which occurred before he joined the conspiracy.
 
 
 18
 Albeit the government had been investigating Mr. Dago for a number of months, it could only link Mr. Alioto to the conspiracy for a brief period of time. Defendant maintains there is no evidence he knew Mr. Dago's cocaine conduct was as extensive as assumed in the district court's findings at sentencing. Further, Mr. Alioto insists he had no idea what Mr. Dago kept in the bags at his apartment. Under these circumstances, defendant argues he should be sentenced as a person involved in a one time drug possession, and not as one who acted over a long term period in concert with a "big time" drug dealer.
 
 
 19
 The only cocaine used by the district court in sentencing was that found on June1, 1992, the date all defendants were arrested. The record indicates defendant's participation in the conspiracy dated to at least May21, 1992. Although the evidence is murky on the precise amounts of cocaine that was located, defendant did not raise the issue during trial, but actually stipulated to the weight of substance produced. On these facts, we cannot say the district court's finding of amounts is clearly erroneous.
 
 
 20
 AFFIRMED.
 
 
 21
 The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable Earl E. O'Connor, Senior District Judge, United States District Court for the District of Kansas, sitting by designation